UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TERI R.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. C19-5413-BAT

**ORDER REVERSING THE COMMISSIONER'S DECISION**

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. She contends the ALJ erred in assessing the medical evidence, her subjective testimony, and statements written by her girlfriend.[1] Dkt. 11. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 34 years old, has a high school diploma, and has worked as a general laborer. Tr. 446. In April 2015, she applied for benefits, alleging disability as of December 2, 2014. Tr. 408-15. Her applications were denied initially and on reconsideration. Tr. 248-55,

---

[1] Plaintiff also assigns error to the ALJ's assessment of her residual functional capacity ("RFC") and step-five findings, but in doing so only reiterates arguments made elsewhere. Dkt. 11. Therefore, these assignments of error need not be addressed separately.

ORDER REVERSING THE COMMISSIONER'S DECISION - 1

258-69. The ALJ conducted a hearing on December 15, 2017 (Tr. 123-57), and subsequently found Plaintiff not disabled. Tr. 15-29. As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

**Step two:** Plaintiff's affective disorder, anxiety disorder, borderline personality disorder, history of obesity, and degenerative disc disease of the cervical spine are severe impairments.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[3]

**RFC:** Plaintiff can perform light work, with additional limitations: she needs a sit/stand alternating option. She can stand/walk for no more than two hours at one time for four out of eight hours in a workday. She cannot work in a dangerous industrial setting, around unprotected heights, or a very noisy setting. She can engage in work-related routine and perfunctory social interaction, but will not be well suited for higher level or sophisticated social interaction.

**Step four:** Plaintiff could not perform her past work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

Tr. 15-29.

## DISCUSSION

**A.  Medical evidence**

Plaintiff raises several challenges to the ALJ's assessment of the medical evidence, namely the evidence related to her migraine headaches and opinions written by examining

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

psychologists and State agency consultants.[4]  The Court will address each challenge in turn.

### 1. Migraines

Plaintiff summarizes evidence regarding her treatment for migraine headaches that she contends shows the ALJ should have found her migraines to be a severe impairment at step two. Dkt. 11 at 6-10. The ALJ seemed to find Plaintiff's migraines to be not medically determinable as well as not severe, although the ALJ does not explain why the headaches are not medically determinable. Tr. 18. The ALJ found Plaintiff's headaches were not severe because Botox treatments were effective in reducing her symptoms (Tr. 18), but Plaintiff emphasizes the record shows while Botox was especially effective at first, this medication failed to continue to be effective and intractable headaches persisted. Dkt. 11 at 9-10.[5]

Even if Plaintiff is correct that her headaches persisted even with Botox and other medications, she does not show this condition causes significant workplace limitations such that the condition should be considered severe at step two. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment[.]"). Plaintiff's brief fails to identify any particular limitation that she contends was overlooked by the ALJ, as none of the evidence cited by Plaintiff specifies any functional limitations. Dkt. 11 at 6-9. Because Plaintiff has failed to meet her burden to show

---

[4] Plaintiff also provides summaries of certain medical evidence, without tying those summaries to an allegation of error in the ALJ's decision. *See* Dkt. 11 at 3 (summarizing evidence that pre-dates the alleged onset date). Because Plaintiff failed to allege an error in connection with this evidence, the Court does not discuss it further.

[5] Plaintiff also argues that the ALJ erred in failing to analyze her migraines in accordance with Social Security Ruling ("SSR") 19-4p (Dkt. 11 at 10), but this ruling went into effect more than a year after the ALJ's decision. *See* 2019 WL 4169635 (Aug. 26, 2019). Thus, SSR 19-4p does not provide a basis for finding error in the ALJ's decision.

that the ALJ harmfully erred at step two, the Court declines to disturb this portion of the ALJ's decision.

### 2. Terilee Wingate, Ph.D.

Dr. Wingate examined Plaintiff in March 2015 and completed a DSHS form opinion describing her symptoms and limitations. Tr. 536-45. Dr. Wingate noted Plaintiff had a "very strong disability conviction" and her depression inventory self-reporting suggested "negative impression m[anagement]." Tr. 540, 544. Dr. Wingate also opined Plaintiff's functional limitations were mostly mild or moderate, with a few rated marked. Tr. 539.

The ALJ discounted Dr. Wingate's opinion as to Plaintiff's marked limitations, finding the marked limitations were inconsistent with the "essentially unremarkable mental status examination" Dr. Wingate performed. Tr. 26. It is true, as noted by Plaintiff, that Dr. Wingate did reference some abnormal mental status examination findings, but many of these abnormal findings do not directly connect to the marked limitations found by Dr. Wingate. For example, Dr. Wingate noted Plaintiff had trouble with proverb interpretation, did not show appropriate judgment when asked what she would do if she saw fire in a crowded theater, and "gave up" after performing three serial 3 subtractions (Tr. 541), but none of these findings directly bear on workplace activities. While the ALJ may have minimized the abnormal findings in his summary of Dr. Wingate's opinion, those abnormalities do not materially contradict the ALJ's finding that Dr. Wingate's mental status examination was inconsistent with the marked limitations she found. Accordingly, the Court finds no harmful error in the ALJ's assessment of Dr. Wingate's opinion.

### 3. William Wilkinson, Ed.D.

Dr. Wilkinson examined Plaintiff in March 2017 and completed a DSHS form opinion describing her symptoms and limitations. Tr. 667-73. Dr. Wilkinson noted Plaintiff omitted

some significant parts of her history during his interview (when compared with his review of Dr. Wingate's opinion), and Dr. Wilkinson rated Plaintiff's functional limitations as no more than moderate in severity. Tr. 668, 670. The ALJ gave great weight to Dr. Wilkinson's opinion. Tr. 27.

Plaintiff argues the ALJ erred by failing to account for the moderate limitations listed in Dr. Wilkinson's opinion (Dkt. 11 at 6) but does not explain how the ALJ's RFC assessment is inconsistent with Dr. Wilkinson's moderate limitations. Because Plaintiff's assignment of error rests upon an alternate interpretation of the evidence, without showing error in the ALJ's reasonable interpretation, the Court finds Plaintiff has not met his burden to show harmful legal error in the ALJ's assessment of Dr. Wilkinson's opinion.

### 4. State agency consultants

The State agency consultants opined Plaintiff was not disabled, but was limited to performing "simple tasks and procedures" and was capable of adapting to "simple changes" and carrying out "simple goals and plans." Tr. 212-14, 243-45. The ALJ gave some weight to the State agency opinions but found the entire record was more consistent with the limitations as described in the RFC assessment. Tr. 26-27. The ALJ did not include any restrictions to "simple" work or "simple" changes in the RFC assessment; the only mental limitations included in the RFC pertained to social interaction and production pace. Tr. 20-21.

The ALJ's conclusory reasoning regarding the State agency opinions lacks specificity and does not constitute an explanation as to why he relied on other evidence instead of these opinions. This lack of specific reasoning constitutes error. *See* SSR 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). The Commissioner contends that

any error is harmless because the jobs identified at step five are all unskilled jobs (Tr. 28-29), which is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." SSR 83-10, 1983 WL 31251, at *7 (Jan. 1, 1983). The Commissioner (Dkt. 12 at 13-14) only references two of the jobs as consistent with the State agency opinions, even though all three are "unskilled," presumably because two jobs require level-two reasoning, while the third requires level-three reasoning. *See* Tr. 28-29 (referencing Dictionary of Occupational Titles ("DOT") 239.567-010, 1991 WL 672232 (office helper job definition, which includes level-two reasoning); DOT 211.462-010, 1991 WL 671840 (cashier II job definition, which includes level-three reasoning); DOT 230.663-010 (deliverer job definition, which includes level-two reasoning)).

The definition of level-two reasoning requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles, App. C. The Ninth Circuit has found level-two reasoning to be consistent with a restriction to simple work. *See, e.g.*, *Turner v. Berryhill*, 705 Fed. Appx. 495, 498-99 (9th Cir. 2017).

But even if the State agency opinions are consistent with two of the step-five jobs in so far as they involve arguably only simple work, it is not clear whether those jobs are consistent with the State agency consultants' opinion that Plaintiff was limited to adapting to simple changes. Again, neither the RFC nor the VE hypothetical referenced any adaptation deficits, and it cannot be determined from reading the DOT alone whether the jobs identified at step five require adaptation abilities beyond those indicated by the State agency consultants. Because the Court cannot find the two step-five jobs to be entirely consistent with the limitations in the State

agency opinions, the Court cannot find that the ALJ's error in failing to provide adequate reasons to discount the State agency opinions is harmless. On remand, the ALJ must reconsider the State agency opinions and either credit them in their entirety or provide legally sufficient reasons to discount them.

**B.      Plaintiff's subjective testimony**

The ALJ discounted Plaintiff's subjective allegations because (1) the medical evidence showed her physical and mental symptoms were not so severe as to preclude work; (2) Plaintiff's allegations of significant neurologic symptoms, depression and anxiety were not corroborated by objective evidence; (3) Plaintiff's neck symptoms and mental health symptoms were controlled by treatment; (4) Plaintiff was never psychiatrically hospitalized and engaged in minimal counseling; and (5) Plaintiff's activities were not as limited "to the extent one would expect[.]" Tr. 22-26. Plaintiff argues these reasons are not clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

The Court agrees the ALJ's reasoning includes error. The ALJ's discussion of Plaintiff's activities fails to identify any inconsistency with her testimony or to explain how she demonstrates transferable work skills, and thus this reasoning fails to pass muster. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills").

Furthermore, to the extent the ALJ indicated Plaintiff's neck symptoms improved with Botox treatment (Tr. 25), this finding is not accurate because Plaintiff underwent Botox treatment for her migraine headaches, rather than her neck symptoms. *See, e.g.*, Tr. 763-74. Moreover, the Botox treatments did not lead to elimination of Plaintiff's headaches. *Id.* The

ALJ failed to discuss evidence showing that subsequent Botox injections were not as effective, and his summary of the evidence is therefore misleading. *Id.*

In view of these errors, the ALJ shall reconsider Plaintiff's testimony on remand and either credit them or provide legally sufficient reasons to discount them.

**C.     Lay statements**

Plaintiff's girlfriend, Nikki Atwood, completed two statements describing Plaintiff's symptoms and limitations. Tr. 453-60, 509-13. The ALJ discounted Ms. Atwood's statements because they were inconsistent with the medical evidence (Tr. 27), and Plaintiff contends this is not a germane reason to do so. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness.").

The Court finds the ALJ's reasoning is germane. Ms. Atwood described limitations that were inconsistent with the objective medical evidence, such as fainting spells and numbness in her hands. Tr. 510. But as noted by the ALJ, the medical evidence repeatedly indicated no neurologic symptoms and no evidence of convulsions. Tr. 25 (citing Tr. 554-59). Because Ms. Atwood described symptoms that were inconsistent with the objective medical evidence, the ALJ was entitled to discount Ms. Atwood's statements. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

**CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reconsider the State agency opinions and reconsider Plaintiff's subjective testimony, develop the record and reassess plaintiff's RFC as needed and proceed to the remaining steps as appropriate.

DATED this 14th day of January, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge